30 C.C.P.A. (Patents)

## In re CUMMINGS.

### Patent Appeal No. 4722.

Court of Customs and Patent Appeals.

June 1, 1943.

William D. Sellers, of Chicago, Ill. (Harry S. Demaree, of Chicago, Ill., and Elmer Stewart and William S. Hodges, both of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel) for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 14, 15, 16, and 19 in appellant's application for a patent for an alleged invention relating to a suction cleaner, generally referred to as a "vacuum cleaner," for use in the household.

Twelve claims were allowed by the Primary Examiner.

The appealed claims read:

"14. In a suction cleaner, suction-creating means, a dirt-laden-air passageway immediately connected to said suction-creating means to convey dirt-laden air therefrom and including a muffler having a rigid metallic casing, and a dust bag with its mouth removably connected by manually operable means to the outer end of said muffler to receive said dirt-laden air.

"15. In a suction cleaner, suction-creating means, a dirt-laden-air passageway connected to the exhaust of said suction-creating means to convey dirt-laden air therefrom and including a muffler element having a cylindrical metallic body and a sound-deadening lining of rubber, and exposed dirt-filter means connected to and supported by said passageway.

"16. A suction cleaner muffler for a handle-propelled type cleaner, comprising an elongated rigid tube adapted to be connected to and form a passageway for dirt-laden-air exhausted from a suction cleaner casing and having a sound-deadening lining of relatively soft pliable material, and means carried at one end of said tube for attaching a dirt-collecting receptacle and at the opposite end for attaching said tube to the cleaner casing.

"19. In a suction cleaner of the bag-supported-by-handle type, a cleaner comprising a body, suction-creating means in said body, a handle connected to said body to propel said cleaner, a muffler connected to said body to receive dirt-laden air exhausted therefrom and extended below said handle, a dust bag connected to the extreme outer end of said muffler, interiorly open thereto, and supported at its upper end from said handle."

The references are: Rosenfield, 1,253,535, Jan. 15, 1918; Serva, 1,611,786, Dec. 21, 1926; Schnell, 1,811,762, June 23, 1931; Thor, 1,962,370, June 12, 1934; Snell, 1,999,826, Apr. 30, 1935; Giambertoni, 2,018,207, Oct. 22, 1935.

Appellant states in his application that one of his objects is to provide a suction cleaner that operates with a minimum of noise, and that, to that end, he has pro-

vided his suction cleaner with an elongated muffler comprising an outer casing of metal and an inner sleeve of sound-deadening material.

Appellant's sound-deadening material may be rubber, as stated in claim 15, or it may be a relatively soft pliable material, as stated in claim 16. The muffler in appellant's apparatus is secured integrally to the exhaust outlet and increases in cross-sectional area from the exhaust outlet to its upper end which is adapted to receive and seat a dust bag. The dust bag, which is removably secured to the outer end of the muffler, is so arranged that it telescopes downwardly and encloses the muffler and may be removed from the outer end thereof and emptied without removing the muffler. By appellant's arrangement, the dirt-laden stream of air passes through the muffler, which, appellant contends, because of its graduated cross-sectional area (a limitation not contained in the claims) and the lining therein of sound-absorbing material, reduces the "noise-creating vibration in the air exhausted from the cleaner."

It will be observed that claims 14, 15, and 19 define a suction cleaner in combination with a muffler, whereas claim 16 is limited to a muffler for suction-cleaning devices.

The patent to Rosenfield relates to a suction cleaner of the type claimed by appellant, and discloses a suction cleaner having a rigid discharge tube or conduit leading from the suction-fan chamber, and a muffler which, the patentee states, is "formed of a short piece of tube, preferably of flexible rubber fabric tubing, which extends into the porous receptacle or dust collecting bag." The patentee's muffling device forms an extension of the discharge conduit. The patentee states that sound muffling might be obtained by lengthening the discharge conduit, but that such an arrangement, with the dust bag connected to the outer end of the discharge conduit, would "bring the lower end of the bag * * * too far in the rear of the machine for convenience." The patentee further states that "by making the discharge tube of a suitable length, it is possible to muffle or to avoid intensifying the vibrations of the air discharged through the tube under the action of the fan, such suitable length being a length which will not respond to vibrations corresponding to the operating speed of the fan, and, best and most conveniently for a *cleaner of the type shown*,

a length greater than, but less than twice the length of, the shortest tube which will respond to vibrations set up by the fan, or vibrations corresponding to the operating speed of the fan." (Italics ours.) It is also stated in the patent that in order to secure the best results "the total length of the discharge tube including the muffler extension should be greater than that of a tube which will respond to vibrations of the air corresponding to the lowest normal speed of revolution of the fan and less than twice the length of the shortest tube which will respond to vibrations corresponding to the highest normal speed of revolution of the fan."

The patent to Serva relates to a suction cleaner. The patentee states that, in addition to the suction fan, his invention involves a "separate smaller fan to produce a blast of air to impinge and scour the objective surface within the mouth of the cleaner, without the use of a brush and without materially modifying the suction action of the larger fan." It is stated by the patentee that in the prior art a rotary brush was used in the mouth of the cleaner. Although the patent was cited as a reference, it is not referred to in the decision of the examiner finally rejecting the appealed claims, nor is it referred to in either the examiner's statement to the Board of Appeals or in the board's decision. The purpose of citing it as a reference, therefore, is not apparent.

The patent to Schnell relates to an exhaust muffler. The patentee states that his muffler is adapted for use in "practically all of the common types of explosion and steam engines, to fire arms, and to air intakes and exhausts as in air compressors." The patentee discloses a muffler comprising a metal cylinder which, he states, "encloses an intermediate annular space * * * packed with a porous gas-pressure absorbing and sound-absorbing material which may be a mineral fibre, steel, copper or other metallic wool or mixtures thereof, or any other porous gas-pressure absorbing and sound-absorbing, non-flammable material such as sized crushed mineral matter," etc. The patentee also states that for absorbing "air compressor intake and exhaust noises, * * * flammable sound-absorbing materials such as wool, cotton, or other cellulosic fibers may be used."

The patent to Thor relates to a "Vacuum Cleaner Bag Arrangement," and discloses a vacuum or suction cleaner so designed

and arranged that the dust or dirt passes upwardly through an elongated conduit and then downwardly into a dust bag. The patentee states that by his arrangement the dust is delivered to the dust bag "without the necessity of forcing the dust through all the dirt already collected in the bag." The patentee does not disclose a muffler.

The patent to Snell relates to a vacuum cleaner dust bag. The patentee does not disclose a muffler, and, although the patent was cited as a reference, it is not referred to in the decisions of the tribunals of the Patent Office.

The patent to Giambertoni relates to a vacuum cleaner, and discloses a suction cleaner having its air passageways lined with sponge rubber for the purpose of deadening the operating noise of the cleaner. In the patentee's arrangement, the dust-laden air entering the suction cleaner is filtered before it reaches the exhaust outlet. The patentee states that the faces of the passageways in his apparatus, which are in "contact with flowing air, are lined with sound-deadening layers (not shown) in the usual manner."

Claims 14 and 19 were rejected by the Primary Examiner on the patent to Rosenfield. Those claims, together with claim 15, were further rejected by the examiner on the patent to Rosenfield in view of the patent to Giambertoni, the examiner stating that "Giambertoni teaches the lining of the passageways of a suction cleaner with sponge rubber to deaden the operating noise of the cleaner," and to "apply this teaching to Rosenfield and line the walls" of the rigid discharge tube or conduit leading from the suction fan chamber to the muffler "with a sound absorbing substance would not constitute invention." All of the appealed claims were also rejected by the examiner on the patent to Thor in view of the patent to Giambertoni, the examiner stating that it would not involve invention to line the elongated exhaust outlet, disclosed in the patent to Thor, with sponge rubber, in view of the disclosure in the patent to Giambertoni.

The record contains two affidavits of Maurice D. Stahl, physicist in the acoustical division of the engineering laboratory of appellant's assignee (The Hoover Company of North Canton, Ohio), and a supporting affidavit of G. Pierce Daiger, director of the engineering laboratories of the Hoover Company.

The purpose of the affidavits was to establish the inoperativeness of the muffler disclosed in the patent to Rosenfield.

The Primary Examiner briefly, and correctly we think, analyzed the affidavits as follows: " * * * the affidavits urge that in specifying the limits of muffler tube lengths to be used with his suction cleaner, Rosenfield has specified a range of tube lengths *which includes lengths* of tube which will amplify the sound from the cleaner exhaust *as well as lengths* of tube which will muffle the cleaner noise. According to applicant's test results obtained from tests on a Hoover type cleaner, 75% of the tube lengths specified by Rosenfield will muffle the sound and obtain a maximum muffling effect of 14.6% while 25% of the specified tube lengths will amplify the sound with the maximum amplification being only 2.4%." (Italics not quoted.)

The examiner then said: "The properties of mufflers of the type shown by Rosenfield were well known prior to his invention of the combination of a suction cleaner and a muffler secured to the exhaust thereof, and obviously it was as unnecessary for him to describe the specific dimensions of the muffler as it was unnecessary to exactly describe the construction of the motor or of the fan."

In its decision affirming the decision of the Primary Examiner, the Board of Appeals stated, among other things, that, if it was thought desirable, it would be an obvious expedient to substitute a muffler of the type disclosed in the patent to Schnell for one of the type disclosed in the patent to Rosenfield, and that the "arrangement of the filter bag mounted on the outer or the exhaust end of the muffler is considered unpatentable. For instance, Thor shows a filter bag attached to one end of a tube connected with the vacuum fan casing, and the bag could be readily detached without *interfering* with the other parts of the mechanism. This is an equivalent arrangement as to bag support." (Italics quoted.) With reference to the patent to Rosenfield and the affidavits of record relating thereto, the board stated that "by suitable testing, appellant states that he has found that the muffler as described by the patentee would be unsatisfactory for the most disagreeable tones produced by the moving parts. However, the patentee discloses a combination of elements, a suction cleaner with a muffler, as broadly recited in the

748

claims." The board further stated that another reason for holding the appealed claims unpatentable was that in the patent to Giambertoni "all surfaces in contact with the flowing air" were provided with sound-deadening material, such as sponge rubber.

In reply to the argument of counsel for appellant that the patentee Giambertoni "first filters the air and then subjects it to the sound deadening action and that in his device the air filled with dust and other particles is subjected to the muffler," the board stated that it believed that the patentee's arrangement would be preferred and that there was "no showing of advance in the art in not filtering the air before it was submitted to the muffler."

It is argued by counsel for appellant that the disclosure in the patent to Rosenfield does not disclose an operative structure; that one following the teachings of the patentee would obtain an inoperative muffling device for a suction cleaner; and that the references do not teach *"the use of sound-absorbing or deadening material in the dirt-laden air stream"* or the "mounting of the filter bag upon the end of the muffler." (Italics quoted.)

We have given careful consideration to the arguments presented here by counsel for appellant, but are of opinion that the appealed claims are unpatentable over the references of record.

Although it appears from the affidavits of record that of the tube lengths suggested in the patent to Rosenfield as being suitable to muffle disagreeable noises caused by the operation of a suction cleaner, approximately 25 per cent were not suitable for that purpose and actually amplified such noises to the extent of approximately 2.4 percent, it also appears from those affidavits that approximately 75 per cent of the tube lengths suggested by the patentee as being suitable to muffle such disagreeable noises had a maximum muffling effect of 14.6 per cent. It thus appears that the patentee's teaching as to suitable lengths of the muffling tubes was not entirely correct, and that one skilled in the art following such teaching *might not* produce a successful muffling device. However, the patentee discloses a "relatively long" or "elongated" muffling tube and, so far as *the length of the muffling tube is concerned,* the appealed claims call for nothing more. In fact, the only reference in the appealed claims to the length of the muffling tube is in claim 16, which merely calls for an "elongated" muffling tube.

It is true that the patentee Rosenfield does not suggest lining the discharge tube or conduit which forms a passageway for dust-laden air with sound-deadening material. However, the patent to Giambertoni clearly teaches the idea of lining the surface of all "passageways in contact with flowing air" with sound-deadening material.

We are of opinion, therefore, that it would not involve invention to line the elongated muffling tube, disclosed in the patent to Rosenfield, with sound-deadening material, in view of the teaching in the patent to Giambertoni.

The patent to Thor discloses a dust bag with its mouth or intake and removably connected to the outer end of an elongated conduit or discharge tube. The patentee does not state that his elongated conduit acts as a muffling device, or that the conduit extends into the dust bag, as does the muffling device in the Rosenfield patent. The patentee does state, however, that the intake to the dust bag "is at the top so that the air and dust entering the bag does not necessarily disturb the previously admitted dirt which has settled to the bottom or closed end of the bag," and that the mouth or intake end of the bag is so connected to the end of the elongated conduit as to permit the "ready removal" of the bag when it is desired to empty it.

That appellant's application discloses patentable subject matter is evident from the fact that he has been allowed twelve claims which cover appellant's contribution to the art more or less in detail. However, we are of opinion, for the reasons hereinbefore stated, that the claims here on appeal do not define patentable subject matter over the references of record. Accordingly, the decision of the Board of Appeals is affirmed.

Affirmed.